NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

JACOB E. DECKER & SONS,
Respondent.

No. 80–1144
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

Feb. 2, 1981.

Elliott Moore, Deputy Assoc. Gen. Counsel, N. L. R. B., Washington, D. C., for petitioner.

Fulbright & Jaworski, T. J. Wray, Houston, Tex., for respondent.

Before GEE, RUBIN and RANDALL, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Again we review a National Labor Relations Board order to remedy the effects of an unfair labor practice. The Board ordered discharged employees Dominguez and Orosco reinstated with back pay. Another panel of this court concluded that the company had committed an unfair labor practice in discharging the employees, but remanded the case to the Board to consider the effect of their post–discharge felony convictions and to determine what form of remedy would best serve the policies of the National Labor Relations Act, taking into account the employees' suitability for reinstatement and their entitlement to back pay. *NLRB v. Jacob E. Decker & Sons*, 569 F.2d 357 (5th Cir. 1978).

On remand, the parties submitted statements of position and the Board ordered a supplemental hearing before an administrative law judge. The ALJ concluded that Dominguez, who was a probationary employee at the time of his discharge, should not be reinstated, but should be awarded back pay from the date of his discharge until the date of his conviction, and that Orosco should be reinstated with back pay notwithstanding his felony conviction for possession of "more than four ounces" of marijuana. The Board affirmed this decision and seeks enforcement of its order.

The company argues that Orosco would automatically have been discharged as a result of his felony conviction and, therefore, reinstatement is not a proper remedy. The Board concluded that the company's management exercised discretion in terminating convicted felons and that the Company's alleged "firm policy" was a pretextual defense. This raises two questions: First, whether the Board's conclusion that

the employer did not have a firm policy of automatically discharging all convicted felons is supported by substantial evidence in the record considered as a whole. If we accept the Board's conclusion, we must then determine whether it is correct in deciding that the reinstatement of Orosco effectuates the purposes of the Act.

If the Board's conclusion that company management did not automatically fire all convicted felons is supported by substantial evidence in the record, that decision is not reviewable. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); *NLRB v. Laredo Coca Cola Bottling Co.*, 613 F.2d 1338 (5th Cir. 1980). We turn, therefore, to the record.

The local plant manager testified about the Company's policy with respect to convicted felons. His statements suggest that decisions regarding convicted felons had to be "cleared" through Phoenix, the Company's headquarters. The Board attaches great significance to the words the plant manager used. The Company argues that the word "cleared" refers merely to the Company's customary industrial practice: the discharge was automatic but, as a matter of protocol, it was processed through headquarters. We attach little significance to nuances drawn from the manager's words and find them alone insufficient fulcrum on which to lever the opinion.

On the other hand, there was also testimony that the manager told an employee facing a possible criminal prosecution that the manager would "do everything" possible to help the employee retain his job if he was convicted. In addition, there was evidence concerning the actions the Company took with regard to "lead boner Santiago Gonzalez."[1]

---

1. Gonzalez's employment history is as follows:

| | |
|---|---|
| 1970 | Hired. |
| 12/73 | Arrested and indicted for assault with intent to commit murder. |
| 8/74 | Pled guilty to assault with intent to commit murder without malice (a lesser felony); sentenced to three years. |
| 8/74 | Branch manager McCarty secured Gonzalez's release from jail by signing his appeal bond. |
| 10/16/75 | Sentence suspended; Gonzalez placed on probation. |
| 10/19/75 | *Resigned* to work in another city. |
| 12/76 | Returned and was hired as a temporary worker for two weeks. |

Despite the asserted company policy of automatically terminating any convicted felon, Decker permitted Gonzalez to continue working as a permanent employee for more than one year after he was convicted of a felony. He then resigned, apparently to work in another city. After his resignation, Gonzalez returned to San Antonio and was hired as a temporary worker. The company argues that Gonzalez was permitted to retain his permanent employment for one year following his conviction only because the conviction was not yet final and that his subsequent employment, being temporary, is irrelevant to our inquiry. When the Board assessed this in the light of the facts that one of the employees allegedly discharged pursuant to Decker's policy was fired immediately after her conviction and three weeks prior to sentencing and that, after his conviction became "final," Gonzalez resigned rather than being terminated, the Board might well find the company's explanation unconvincing.

This evidence, not by any means conclusive, supports the interpretation that at least one employee who was ostensibly affected by the alleged company policy was not considered unemployable because of his felony conviction. The Board might also take into account the fact that only one, or perhaps two, permanent employees were identified by Decker as having been discharged between 1970 and 1978 pursuant to this alleged corporate policy.

■ These items, the plant manager's testimony, the isolated prior instance of automatic termination and the Gonzalez episode, are not overwhelming. However, when weighed against the little that was offered to support the alleged no–second–

chance policy, they suffice for substantiality.[2]

■ In the light of the Board's conclusion that Decker's management had some discretion to retain or discharge a convicted felon, we must determine, as required by Section 10(c) of the NLRA, 29 U.S.C. § 160(c), whether its order to reinstate Orosco effectuates the purposes of the National Labor Relations Act. In determining whether Orosco's reinstatement effectuates the policies of the NLRA, we consider as one factor the Board's conclusion that all convicted felons were not inexorably discharged. Our primary inquiry, however, is whether reinstatement would create an unacceptable employment relationship and, therefore, frustrate the purposes of the NLRA.

■ A remedy ordered by the Board is subject only to limited review by this court. *Fiberboard Paper Products v. N. L. R. B.*, 379 U.S. 203, 216, 85 S.Ct. 398, 405, 13 L.Ed.2d 233, 241 (1964). The Board and the courts have refused to order reinstatement of an unlawfully discharged employee who was guilty of unlawful or offensive conduct of such a nature that reinstatement would create an undesirable employment situation. *See, e. g., NLRB v. Big Three Welding Equipment Co.*, 359 F.2d 77, 82–84 (5th Cir. 1966) (employee admitted theft from employer), *NLRB v. R. C. Can Co.*, 340 F.2d 435 (5th Cir. 1965) (employee threatened company president).

■ The Board here concluded that reinstatement of Orosco would not create an unacceptable employment relationship and that, in the face of his unlawful discharge, the policies of the NLRA would best be served by ordering him reinstated. This

| | |
|---|---|
| 2/77 | Applied for permanent position; but told he was unemployable because of his felony conviction. |
| 12/77 | Again sought permanent employment. After probation officer told company official that the suspended sentence was not viewed as a conviction by the state, Gonzalez was told to file an application but was not hired (either because of bad references or conviction; the testimony was in conflict). |

2. The record also discloses that even the Company's published rules did not contain language that required mandatory discharge if an employee were convicted of a felony. Company Rule 31, in force at the time of Orosco's discharge, read that any conviction would be grounds for "discipline." Under the current corporate rules, a felony conviction "may" result in discharge. While not dispositive, the phraseology of Decker's own rules do not support the assertion that termination inexorably follows an employee's felony conviction.

conclusion was within the scope of the Board's remedial discretion.

■ We also conclude that the back–pay awards to both Dominguez and Orosco properly effectuate the purposes of the Act by making the employees whole for losses suffered as a result of their unlawful discharges. Because we enforce the Board's reinstatement of Orosco, he is entitled to back pay from the date of his discharge until he is offered reinstatement. The Board's action with respect to Dominguez, however, requires a different analysis.

Applying the factors that would be consonant with the discretionary policy, the ALJ concluded that in view of his employment history and other factors, Dominguez would have been discharged after he was convicted of a felony. He would, however, have been employed by Decker until that time. Therefore, the ALJ concluded that Dominguez should not be reinstated, but that he is nevertheless entitled to be compensated for wages lost as a result of his unlawful discharge. We conclude that the Board's remedy is a pragmatic and reasonable response to the unlawful discharge. If back pay were not awarded, Decker would profit as a result of its unlawful conduct and Dominguez would not be made whole for losses suffered as a result of his unlawful discharge. Therefore, Dominguez should be paid wages lost from the date of his discharge until the date of his felony conviction.[3]

Accordingly, the Board's order will be ENFORCED in all respects.

---

**3.** Similarly, in *NLRB v. Big Three Welding Equipment Company*, 359 F.2d 77 (5th Cir. 1966), we enforced the Board's cease and desist order and its restitution of back pay to unlawfully discharged employees but refused to enforce an order of reinstatement because the employees' admission of pilfering the company's property would have created an unacceptable employment relationship.